1  STRADLING YOCCA CARLSON & RAUTH, P.C.
   John F. Cannon (SBN 149263)
2  Aaron C. Humes (SBN 272141)
   90 New Montgomery Street, Suite 1015
3  San Francisco, CA  94105
   Telephone: (415) 321-6026
4  Facsimile: (415) 283-1446
   jcannon@sycr.com
5  ahumes@sycr.com

6  [Additional counsel on signature page]

7  *Attorneys for Defendants Clovis Oncology, Inc.,*
   *Patrick J. Mahaffy, Erle T. Mast, M. James Barrett,*
8  *Brian G. Atwood, James C. Blair, Paul Klingenstein,*
   *and Edward J. McKinley*

9
                  **UNITED STATES DISTRICT COURT**
10
                **NORTHERN DISTRICT OF CALIFORNIA**
11
                    **SAN FRANCISCO DIVISION**
12

13 | ELECTRICAL WORKERS LOCAL #357 | Case No. 3:16-cv-00933-EMC
   | PENSION AND HEALTH & WELFARE TRUSTS, |
14 | ON BEHALF OF ITSELF AND ALL OTHERS | <u>CLASS ACTION</u>
   | SIMILARLY SITUATED, |
15 |                              |
   |          Plaintiff,          | **CLOVIS DEFENDANTS' NOTICE OF**
16 |                              | **MOTION AND MOTION TO**
   |          v.                  | **TRANSFER VENUE UNDER 28 U.S.C.**
17 |                              | **§ 1404(a) AND MEMORANDUM OF**
   | CLOVIS ONCOLOGY, INC., PATRICK J. | **POINTS AND AUTHORITIES IN**
18 | MAHAFFY, ERLE T. MAST, M. JAMES | **SUPPORT THEREOF**
   | BARRETT, BRIAN G. ATWOOD, JAMES C. |
19 | BLAIR, PAUL KLINGENSTEIN, EDWARD J. | Date:    Thursday, April 7, 2016
   | McKINLEY, SCOTT D. SANDELL, FOREST | Time:    1:30 p.m.
20 | BASKETT, NEA PARTNERS 13, L.P., NEA 13 GP, | Place:   Courtroom 5, 17th Floor
   | LTD, ABERDARE VENTURES IV, L.P., J.P. |          San Francisco Courthouse
21 | MORGAN SECURITIES LLC, CREDIT SUISSE | Judge:   Hon. Edward M. Chen
   | SECURITIES (USA) LLC, STIFEL, NICOLAUS & |
22 | COMPANY, INCORPORATED, MIZUHO |
   | SECURITIES USA INC., AND DOES 1-25, |
23 | INCLUSIVE, |
   |                              |
24 |          Defendants.         |

25

26

27

28

   CLOVIS DEFS.' NOT. OF MOT. AND MOT. TO TRANSFER VENUE - Case No. 3:16-cv-
   00933-EMC

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION .......................................................................................1

STATEMENT OF ISSUES ....................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................2

I       PRELIMINARY STATEMENT ............................................................................................2

II      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ......................................4

III     ARGUMENT ..................................................................................................................6

     A.      TRANSFER TO COLORADO IS WARRANTED UNDER 28 U.S.C. § 1404(a) .................................................................................................................6

           1.     This Action Is Justiciable in the District of Colorado........................7

           2.     The Convenience Factors Weigh in Favor of Transfer......................8

           3.     The Interests of Justice Weigh in Favor of Transfer.......................12

     B.      THE TRANSFEREE COURT CAN DECIDE ANY MOTIONS TO REMAND ................................................................................................................14

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

*A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*,
    503 F.2d 384 (9th Cir. 1974). ................................................................ 13

*Baldwin v. Nat'l Safety Ass'ns*,
    No. C-93-0571 BAC, 1994 WL 139267 (N.D. Cal. Apr. 6, 1994) ......................... 9

*Burse v. Purdue Pharma Co.*,
    No. C 04-594 SC, 2004 WL 1125055 (N.D. Cal. May 3, 2004) ........................ 15

*Cardoza v. T-Mobile USA Inc.*,
    No. 08-5120 SC, 2009 WL 723843 (N.D. Cal. Mar. 18, 2009) ........................ 10

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ....................................................... 13

*Cluck v. IKON Office Sols., Inc.*,
    No. C-11-05027-JSW, 2012 WL 1610789 (N.D. Cal. May 8, 2012) ..................... 8

*Cohn v. Oppenheimerfunds, Inc.*,
    No. 09-cv-1656-WQH-BLM, 2009 WL 3818365 (S.D. Cal. Nov. 12, 2009) ............. 10

*In Re Collins & Aikman Corp. Sec. Litig.*,
    438 F. Supp. 2d 392 (S.D.N.Y. 2006) .................................................. 11

*Cont'l Grain Co. v. The Barge FBL-585*,
    364 U.S. 19 (1960) ..................................................................... 14

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986) ........................................................... 8

*Duong v. ITT Educ. Servs., Inc.*,
    No. C 14-2653 PJH, 2014 WL 3772829 (N.D. Cal. July 31, 2014) .................... 15

*Ferens v. John Deere, Co.*,
    494 U.S. 516 (1990) .................................................................... 12

*Galectin Therapeutics, Inc. Sec. Litig.*,
    No. 3:14-cv-00399-RCJ-WGC, 2015 WL 260881 (D. Nev. Jan. 21, 2015) ............. 11

*Garlough v. Trader Joe's Co.*,
    No. 15-cv-01278-TEH, 2015 WL 4638340 (N.D. Cal. Aug. 4, 2015) ................. 10

*Gerin v. Aegon USA, Inc.*,
    No. C-06-5407 SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007) ................. 7, 10

*Glaxo Grp. Ltd. v. Genetech, Inc.*,
    No. C 10–00675 JSW, 2010 WL 1445666 (N.D. Cal. Apr. 12, 2010) ................. 14

*Harper Woods Emps. Ret. Sys. v. AXT, Inc.,*
    No. C-04-04362-MJJ, 2005 WL 318813 (N.D. Cal. Feb. 7, 2005) ...................................... 14

*Hernandez v. Union Pac. R.R. Co.,*
    No. C 04-04899 JW, 2005 WL 396614 (N.D. Cal. Feb. 18, 2005) ...................................... 13

*Irvine Pharm. Servs., Inc. v. Arnold,*
    No. SA CV-08-0974 DOC ANx, 2008 WL 4792513 (C.D. Cal. Oct. 28, 2008) ............... 7, 8

*Jolly v. Purdue Pharma L.P.,*
    No. 05-CV-1452H, 2005 WL 2439197 (S.D. Cal. Sept. 28, 2005)........................................ 13

*Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000) ............................................................................................... 6

*Jovel v. i-Health, Inc.,*
    No. CV-12-05526-DDP JCGx, 2012 WL 5470057 (C.D. Cal. Nov. 8, 2012) .................... 10

*La. Pac. Corp. v. Money Mkt. 1 Institutional Invest. Dealer,*
    No. C-09-03529 JSW, 2010 WL 1136279 (N.D. Cal. Mar. 22, 2010). ................................ 7

*In re LimitNone, LLC,*
    551 F.3d 572 (7th Cir. 2008) ............................................................................................. 15

*Lou v. Belzberg,*
    834 F.2d 730 (9th Cir. 1987) .......................................................................................... 8, 9

*McCormack v. Safeway Stores, Inc.,*
    No. C-12-4377 MEJ, 2012 WL 5948965 (N.D. Cal. Nov. 28, 2012)................................... 7

*Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.,*
    No. CIV 2:07–2199–WBS EFB, 2010 WL 347901 (E.D. Cal. Jan. 22, 2010)...................... 9

*Menowitz v. Brown,*
    991 F.2d 36 (2d Cir. 1993)................................................................................................ 12

*Morris v. Safeco Ins. Co.,*
    No. C-07-2890, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008)............................................ 9

*In re Nematron Corp. Secs. Litig.,*
    30 F. Supp. 2d 397 (S.D.N.Y. 1998)................................................................................. 11

*Newton v. Thomason,*
    22 F.3d 1455 (9th Cir. 1994) ............................................................................................ 12

*Pac. Coast Fed'n v. Gutierrez,*
    No. C-05-3232 JCS, 2006 WL 194507 (N.D. Cal. Jan. 24, 2006) ...................................... 13

CLOVIS DEFS.' NOT. OF MOT. AND MOT. TO TRANSFER VENUE - Case No. 3:16-cv-00933-EMC

*Pub. Emps.' Ret. Sys. of Miss. v. Stanley,*
    605 F. Supp. 2d 1073 (C.D. Cal. 2009) ................................................. 15

*Rumohr v. Comercia Bank,*
    Nos. C 11-01706 WHA, 2011 WL 2437415 (N.D. Cal. June 17, 2011). ............................. 15

*Siemers v. Wells Fargo & Co.,*
    No. C 05-04518 WHA, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) ............................. 13

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.,*
    549 U.S. 422 (2007) ................................................................... 3, 15

*In re Stac Elecs. Sec. Litig.,*
    89 F.3d 1399 (9th Cir. 1996) ......................................................... 13

*In re Stillwater Mining Co. Sec. Litig.,*
    No. 02 Civ. 2806 DC, 2003 WL 21087953 (S.D.N.Y. May 12, 2003) ................................. 11

*In re VeriFone Sec. Litig.,*
    11 F.3d 865 (9th Cir. 1993) ........................................................ 13

*In re Yahoo! Inc.,*
    No. CV 07–3125 CAS FMOx, 2008 WL 707405 (C.D. Cal. Mar. 10, 2008) ..................... 9-11

*Ward v. Fluor Enters., Inc.,*
    No. C 10-04361 SBA, 2011 WL 778720 (N.D. Cal. Mar. 1, 2011) ..................................... 12

*Young v. Wells Fargo & Co.,*
    No. C-08-3735 SL, 2008 WL 5245894 (N.D. Cal. Dec. 17, 2008) ......................................... 8

**STATUTES AND RULES**

15 U.S.C. §§
    77k ......................................................................................... 5
    77l(a)(2) .................................................................................. 5
    77o ........................................................................................ 5
    77v(a) ..................................................................................... 8
    77z-2 ..................................................................................... 13
    78u-5 .................................................................................... 13

28 U.S.C. §§
    1404(a) ............................................................................ *passim*
    1441 ...................................................................................... 5
    1331 ...................................................................................... 5

Fed. R. Civ. P. 42(a) ..................................................................... 14

Fed. R. Civ. P. 45(c) ................................................................. 11-12

CLOVIS DEFS.' NOT. OF MOT. AND MOT. TO TRANSFER VENUE - Case No. 3:16-cv-00933-EMC

**OTHER AUTHORITIES**

Benefit Office Information, ELECTRICAL WORKERS LOCAL 357 TRUST FUNDS,
https://www.ourbenefitoffice.com/IBEWLocal357/Benefits/Contactus.aspx
(last visited Feb. 23, 2016)......................................................................................................9

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, April 7, 2016, at 1:30 p.m., or as soon thereafter as they may be heard, before the Honorable Edward M. Chen at the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 5, 17th Floor, San Francisco, California 94102, Clovis Oncology, Inc., Patrick J. Mahaffy, Erle T. Mast, M. James Barrett, Brian G. Atwood, James C. Blair, Paul Klingenstein, and Edward J. McKinley (collectively, the "Clovis Defendants") will move the Court for an order transferring this matter to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a).

This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the accompanying declaration of Charles D. Cording; the pleadings and other records in the Court's file; and such other written and oral argument as may be presented to the Court before the matter is taken under submission.

**STATEMENT OF ISSUES**

1.      Whether this securities class action lawsuit should have been commenced in the U.S. District Court for the District of Colorado.

2.      Whether the convenience of the parties and witnesses and the interests of justice support a transfer of this securities class action lawsuit to the District of Colorado where it should be consolidated with four substantially similar purported class action lawsuits asserting similar claims against Clovis, including one recently transferred by Judge Seeborg from this District involving the same facts and circumstances to the District of Colorado.

3.      Whether in the absence of any meaningful connection between this litigation and this forum, the Clovis Defendants' motion to transfer should be decided before any motion that may be filed by the plaintiff seeking to remand this case to the Superior Court for the County of San Mateo.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    PRELIMINARY STATEMENT**

This case should be transferred to the District of Colorado where it may be consolidated with four related purported class actions asserting similar claims against defendant Clovis Oncology, Inc. ("Clovis" or the "Company") and certain of its directors and officers under the federal securities laws.  Those four actions, all of which were filed before the instant action, are pending in the District of Colorado.  The District of Colorado is the best forum for this action.  It is the District in which Clovis has its headquarters, where most of the relevant conduct occurred, and where the key witnesses and documents are located.  Indeed, one of the recently filed securities class actions was transferred by this Court to the District of Colorado for substantially the same reasons.  *See Moran v. Clovis Oncology, Inc.*, 3:15-cv-05323-RS, Dkt. No. 35 (N.D. Cal. Feb. 18, 2016).  Transfer of this action to the District of Colorado serves the interests of justice, promotes judicial economy, and avoids the substantial burdens of duplicative litigation in two federal fora.

The actions pending against Clovis center on its disclosures concerning the drug "rociletinib," which is in advanced clinical trials for the treatment of non-small cell lung cancer.  The lawsuits allege that Clovis and certain of its executives made materially false and misleading statements about the clinical efficacy of the drug and its likelihood of being approved by the U.S. Food and Drug Administration (the "FDA").  The lawsuits present common factual issues and substantially overlapping legal issues.  But unlike the other lawsuits, which, as mentioned above, are all now pending in the District of Colorado, this action was brought in California, a forum with minimal, if any, discernible ties to the litigation.  There is no reason why two class action lawsuits challenging Clovis' rociletinib disclosures should proceed at the same time in two different fora—California *and* Colorado—when a single consolidated purported class action lawsuit in Colorado plainly protects the interests of the investor class.

Moreover, the plaintiff's choice of forum is entitled to no deference for a number of reasons.  First, the plaintiff is not a resident of this District—it is evidently a resident of the District of Nevada.  Second, the plaintiff purports to bring this action on behalf of a nationwide class of Clovis investors and the interests of those same class members will be protected in the purported class

actions pending in the District of Colorado.  Third, none of the allegations giving rise to plaintiff's securities claims took place here as Clovis is headquartered in Boulder, Colorado.  Thus, based upon firmly rooted Ninth Circuit principles, the circumstances of this case make clear that plaintiff's selection of forum is entitled to virtually no weight under the circumstances of this case.

By contrast, there are compelling reasons for this litigation to proceed in the District of Colorado.  This is an action challenging securities filings that were drafted, edited, reviewed, approved, and issued in Colorado.  Hence, the relevant witnesses and documents are located in Colorado.  Moreover, because securities class actions generally focus on the issuer, *not* the plaintiff, transfers to the district in which the issuer is headquartered are routine and broadly regarded as furthering the interests of judicial efficiency.  Most critically, upon transfer, this lawsuit can be consolidated and/or coordinated with the four lawsuits already pending in the District of Colorado, eliminating the risk of inconsistent rulings and lowering the expenses and burdens of litigation for all parties.  Thus, all of the factors commonly used to evaluate a motion to transfer under Section 1404(a) strongly support transfer of this action to the District of Colorado.

Finally, the parties evidently dispute not only whether this lawsuit should proceed in Colorado or California, but also whether it should proceed in federal or state court.  The latter is a question that has divided the federal courts in the circumstance of this case, producing splits not only across, but often within, circuits.  This Court need not resolve that question here because—as the Supreme Court has squarely held in *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007)—a decision to transfer a case is not a decision on the merits.  Hence, the sequencing of transfer and remand motions is left to the sound discretion of the court.  Here, transfer should be decided before remand, since removal raises difficult and unsettled questions of law and, as explained below, there are indications that the plaintiff is engaging in forum shopping.[1]

---

[1] "Complaint" or "Compl. ¶ _" referenced herein refers to plaintiff's Complaint for Violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 attached as Exhibit A-2 to Defendants' Notice of Removal (*see* Dkt. 1-1).  Clovis accepts the allegations of the Complaint as true solely for purposes of this motion to transfer, and reserves the right to challenge those allegations at the appropriate time.

CLOVIS DEFS.' NOT. OF MOT. & MOT. TO TRANSFER  - Case No. 3:16-cv-00933-EMC

1    **II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

2          Founded in April 2009, Clovis is a biopharmaceutical company focused on acquiring,

3    developing, and commercializing anti-cancer agents in the United States and internationally.  Compl.

4    ¶ 14.  Clovis is headquartered in Boulder, Colorado, *id.*, and maintains additional offices in San

5    Francisco, California; Cambridge, United Kingdom; and Milan, Italy.  Its offices in Boulder are used

6    primarily for corporate functions, while its other offices are used for clinical development functions

7    and laboratory space.

8          This litigation centers on the drug rociletinib, which is in Phase III testing for the treatment

9    of non-small cell lung cancer.  On May 19, 2014, Clovis announced that rociletinib had been

10   designated a "Breakthrough Therapy" by the FDA.  *See id.* ¶ 32.  In June 2015, Clovis initiated a

11   New Drug Application ("NDA") with the FDA for rociletinib.  *See id.* ¶ 34.  On November 16, 2015,

12   Clovis issued a press release disclosing that the FDA had requested additional clinical data regarding

13   the efficacy of rociletinib.  *See id.* ¶ 5.  The press release noted that in connection with the rociletinib

14   clinical trials, Clovis had presented data publicly, at medical meetings, and in its FDA submissions

15   on an interim basis, and that, as the data matured, the number of patients with unconfirmed

16   responses who converted to confirmed responses was lower than expected.  *See id.*  Clovis warned

17   that the FDA's request for additional data could delay its potential approval of rociletinib.  *See id.* ¶

18   37.  For a variety of reasons, the price of Clovis stock dropped significantly in trading on November

19   16.  *See id.* ¶ 6.

20         In the wake of these developments, plaintiffs brought virtually identical stock-drop securities

21   class actions.  On November 19, 2015, the first two lawsuits were filed by putative shareholders of

22   Clovis in the District of Colorado:  (1) *Medina v. Clovis Oncology, Inc.*, *et al.*, No. 1:15-cv-2546,

23   Dkt. No. 1 (D. Colo. Nov. 19, 2015) (the "Medina Action") (Cording Decl. A); and (2) *Kimbro v.*

24   *Clovis Oncology, Inc., et al.,* No. 1:15-cv-2547, Dkt. No. 1 (D. Colo. Nov. 19, 2015) (the "Kimbro

25   Action") (Cording Decl. B).  Then, on November 20, 2015, a third lawsuit was filed in the Northern

26   District of California, *Moran v*. *Clovis Oncology, Inc., et al.*, No. 3:15-cv-5323, Dkt. No. 1 (N.D.

27   Cal. Nov. 20, 2015) (the "Moran Action") (Cording Decl. C), which was transferred to the District

28   of Colorado by order of Judge Seeborg on February 17, 2016 (Cording Decl. D).  On December 14,

1    2015, a fourth lawsuit was brought in the District of Colorado under the caption *Rocco v. Clovis*

2    *Oncology, Inc.*, *et al.*, No. 1:15-cv-02697, Dkt. No. 1 (D. Colo. Dec. 14, 2015) (the "Rocco Action")

3    (Cording Decl. E).  The lawsuits all purport to assert claims against Clovis and certain executives of

4    the Company under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

5    Act").[2]

6            Thereafter, plaintiff filed the above-captioned action on January 22, 2016 in the Superior

7    Court of the State of California, County of San Mateo.  *See* Dkt. No. 1-1.  The complaint purports to

8    assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"),

9    15 U.S.C. §§ 77k, 77l(a)(2), and 77o.  Compl. ¶ 10.  All of the claims are based upon alleged

10   misstatements and omissions in the Registration Statement and Prospectus issued by the Company in

11   connection with its July 8, 2015 secondary offering of Clovis securities.  Compl. ¶¶ 1, 4.  The

12   complaint names as defendants the Clovis Defendants, certain underwriters of the secondary

13   offering, certain venture capital investors in Clovis, and 25 "Does."  Compl. ¶¶ 14-26.  Concurrent

14   with this Motion, the Clovis Defendants removed this action to federal court pursuant to 28 U.S.C.

15   § 1441 on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.

16           On February 18, 2016, the Medina, Kimbro, and Rocco Actions were consolidated into a

17   single proceeding before Judge Moore in the District of Colorado.  *See* Cording Decl. F at 3-5.  By

18   and through the same order, a plaintiff group—consisting of M.Arkin (1999) LTD and Arkin

19   Communications LTD (collectively, the "Arkin Group")—was appointed lead plaintiff under the

20   Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and the law firm Bernstein

21   Litowitz Berger & Grossmann LLP was appointed lead counsel for the putative class.  *See id.* at 5-

22   10.  Judge Moore further ordered the parties to meet and confer and submit a proposed scheduling

23   order addressing, among other things, the filing of a consolidated complaint by the Arkin Group.

24   *See id.* at 10.  While the claims originally asserted in the Colorado litigation were under the

25   Exchange Act, the Arkin Group stated in a filing to this Court that it is "already actively involved in

26   developing a consolidated complaint, which includes claims arising under the Exchange Act, as well

27   _____

28   [2] The lawsuits name substantially overlapping defendants, namely Clovis, Mr. Mahaffy, and Mr.
     Mast, all of whom are named as defendants in this action, except that the Medina Action excluded
     Mr. Mast as a defendant.

1    as the *Securities Act of 1933* . . . arising out of Clovis' July 9, 2015 secondary offering of stock"—

2    the very same claims asserted by plaintiff here.  *See* Cording Decl. G at 4 (emphasis added).

3            This action rests on the same factual foundation as the four prior actions pending in the

4    District of Colorado.  The complaint cites five purported facts that Clovis failed to disclose in its

5    offering materials:  (1) the NDA submitted by Clovis to the FDA was based on immature data; (2)

6    the Breakthrough Therapy designation submission was based on immature data; (3) Clovis presented

7    immature data publicly and at medical meetings; (4) as the efficacy data for rociletinib matured, the

8    number of patients with unconfirmed responses who converted to confirmed responses was lower

9    than expected; and (5) the FDA was likely to delay and/or reject the NDA for rociletinib.[3]  With

10   minor variations, these allegations appear to have been lifted virtually verbatim from the earlier

11   lawsuits pending in the District of Colorado.[4]  The principal difference is that the Colorado actions

12   alleged that these "facts" were concealed across a wider array of securities filings than the

13   Prospectus and Registration Statement used in the secondary offering.[5]  Furthermore, the complaints

14   all assert that the November 16 press release was a "corrective disclosure" that caused a decline in

15   the value of Clovis stock.[6]  Finally, the complaints all seek relief in the form of compensatory

16   damages.[7]

17   **III.   ARGUMENT**

18        **A.   TRANSFER TO COLORADO IS WARRANTED UNDER 28 U.S.C. § 1404(a)**

19            A district court may transfer a civil action to another district where the action might have

20   been brought for the convenience of the parties and witnesses and in the interests of justice.

21   28 U.S.C. § 1404(a).  A motion for transfer rests within the broad discretion of the court.  *See Jones*

22   *v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).  Transfer under 28 U.S.C. § 1404(a)

23   necessitates two findings:  "first, that the transferee court is one where the action 'might have been

24
_____

25   [3] *See* Compl. ¶ 9.
     [4] *See Kimbro* Compl. ¶ 5, *Moran* Compl. ¶ 54, *Rocco* Compl. ¶ 5.

26   [5] *Compare Medina* Compl. ¶¶ 18-22, *Kimbro* Compl. ¶¶ 17-34, *Rocco* Compl. ¶¶ 17-34, *and Moran* Compl. ¶¶ 16-53, *with* Compl. ¶¶ 4, 9, 32, 34.

27   [6] *See Medina* Compl. ¶¶ 23-24, *Kimbro* Compl. ¶¶ 36-37, *Rocco* Compl. ¶¶ 36-37, *Moran* Compl. ¶¶ 55, 58, Compl. ¶¶ 5-6.

28   [7] *See Medina* Compl. at 18, *Kimbro* Compl. at 43, *Rocco* Compl. at 44, *Moran* Compl. at 63, Compl. at 17–18.

CLOVIS DEFS.' NOT. OF MOT. & MOT. TO TRANSFER  - Case No. 3:16-cv-00933-EMC

1    brought,' and second, that the convenience of the parties and witnesses and the interest of justice

2    favor transfer." *McCormack v. Safeway Stores, Inc.*, No. C-12-4377 MEJ, 2012 WL 5948965, at *3

3    (N.D. Cal. Nov. 28, 2012) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985)).

4         In assessing whether transfer is warranted, courts may consider a number of "convenience"

5    factors, including "(1) the convenience of the parties, (2) the convenience of the witnesses—

6    including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy

7    of deposition testimony, (3) the accessibility to records and documents, (4) the location where the

8    conduct complained of occurred, and (5) the applicability of each forum state's substantive law."

9    *Irvine Pharm. Servs., Inc. v. Arnold*, No. SA CV-08-0974 DOC ANx, 2008 WL 4792513, at *2

10   (C.D. Cal. Oct. 28, 2008).  In assessing the "interests of justice," courts may consider the pendency

11   of multidistrict litigation arising from the same facts.  *See Gerin v. Aegon USA, Inc.*, No. C-06-5407

12   SBA, 2007 WL 1033472, at *7 (N.D. Cal. Apr. 4, 2007).

13        The motion presents a paradigmatic case for transfer under Section 1404(a).  This action

14   should have been brought in Colorado—the hub of business activity for Clovis, the place where

15   relevant witnesses and documents are located, and the forum in which parallel litigation is pending.

16   In short, Colorado serves as this litigation's "center of gravity."  *McCormack*, 2012 WL 5948965, at

17   *4 (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998)).  Proceeding in

18   Colorado will result in substantial efficiencies at no discernible cost to plaintiff—which is not a

19   resident of this District.  Thus, like the Moran Action before it, this action should be transferred to

20   Colorado.

21              **1.    This Action Is Justiciable in the District of Colorado**

22        There can be no real dispute that this action "might have been brought" in the District of

23   Colorado where four parallel lawsuits are already pending.  Courts in the Ninth Circuit find this

24   requirement to be satisfied so long as the transferee court:  "(1) is able to exercise personal

25   jurisdiction over the defendants, (2) has subject matter jurisdiction over the claim, and (3) would be

26   a proper venue." *La. Pac. Corp. v. Money Mkt. 1 Institutional Invest. Dealer*, No. C-09-03529 JSW,

27   2010 WL 1136279, at *1 (N.D. Cal. Mar. 22, 2010).

28

1    Each of these factors is easily satisfied in this case.  The Clovis Defendants are all subject to

2    personal jurisdiction in Colorado either because they are residents of that state, or because they have

3    "minimum contacts with the forum state such that the exercise of personal jurisdiction does not

4    offend traditional notions of fair play and substantial justice" by virtue of their involvement in the

5    secondary offering or their having transacted business with Clovis in Colorado.  *Decker Coal Co. v.*

6    *Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986) (citing *Int'l Shoe Co. v. Washington*,

7    326 U.S. 310, 316 (1945)).  Moreover, Section 22 of the Securities Act grants the district courts of

8    the United States subject matter jurisdiction over actions arising under the Securities Act.  *See* 15

9    U.S.C. § 77v(a).  Finally, because the District of Colorado is the district wherein Clovis "is found"

10   and wherein each of the remaining Clovis Defendants either is "an inhabitant" or "transacts

11   business," venue is likewise proper under Section 22.  *See id.*

12            **2.       The Convenience Factors Weigh in Favor of Transfer**

13            The convenience of the litigants and witnesses weigh decisively in favor of a transfer to the

14   District of Colorado for at least four reasons:

15            *First*, the plaintiff's selection of a California forum should be afforded no weight in this

16   case.[8]  In considering a motion under 28 U.S.C. § 1404(a), the plaintiff's interest in preserving its

17   selected forum is diminished when the suit is brought in a representative capacity, such as "when an

18   individual brings a derivative suit or represents a class."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th

19   Cir. 1987) (concluding district court did not abuse its discretion in granting motion to transfer to the

20   Southern District of New York); *accord Young v. Wells Fargo & Co.*, No. C-08-3735 SL, 2008 WL

21   5245894, at *4 (N.D. Cal. Dec. 17, 2008) (granting motion to transfer to Southern District of Iowa

22   because, *inter alia*, "this case is brought as a nationwide class action").  This consideration here

23   counsels in favor of a change in venue to the District of Colorado.  It is indisputable that plaintiff

24

25   _____

26   [8] There is no consensus on whether the plaintiff's interest in a selected forum is part of the
     "convenience" prong or "interests of justice" prong of the Section 1404(a) transfer test.  *Compare*
     *Irvine Pharm.*, 2008 WL 4792513, at *3 (considered as part of interests of justice prong), *with Cluck*

27   *v. IKON Office Sols., Inc.*, No. C-11-05027-JSW, 2012 WL 1610789, at *2 (N.D. Cal. May 8, 2012)
     (considered as part of convenience prong).  Regardless, as explained herein, it is clear that the

28   plaintiff's interest in proceeding in this District should be afforded virtually no weight under either
     prong of the inquiry.

styled this action as a nationwide class action.  *See* Dkt. No. 1-1.  There is nothing in the record to suggest that class members would be so concentrated in this District that it would warrant proceeding here as opposed to the District of Colorado—where the primary defendants reside and the relevant events occurred.  *See Baldwin v. Nat'l Safety Ass'ns*, No. C-93-0571 BAC, 1994 WL 139267, at *2 (N.D. Cal. Apr. 6, 1994) (transferring class action to defendants' home district because "there is no indication that a disproportionate number of class members will be Californians" and because "[t]he plaintiff's choice of forum is entitled to less weight than usual because this is brought as a class action").

As the Ninth Circuit further instructed in *Lou*, if the named plaintiff does not reside in the forum and the operative events giving rise to the lawsuit did not occur in the forum, the named plaintiff's choice of forum "is entitled to only minimal consideration."  *Lou*, 834 F.2d at 739; *see also Morris v. Safeco Ins. Co.*, No. C-07-2890, 2008 WL 5273719, at *4 (N.D. Cal. Dec. 19, 2008) ("[T]he deference given to plaintiff's choice of forum is slight, if any, when, as here, the plaintiff's chosen forum lacks a significant connection to the events that gave rise to the complaint."); *In re Yahoo! Inc.*, No. CV 07-3125 CAS FMOx, 2008 WL 707405, at *6 (C.D. Cal. Mar. 10, 2008) ("Because plaintiffs do not reside in this forum and because this case is a class action, the usual reasons for deferring to a plaintiff's choice of forum do not apply.").  That is precisely the case here.  Plaintiff is a resident of the District of Nevada, *not* this District,[9] and the complaint is devoid of allegations that any of the conduct giving rise to the claims at issue in this litigation occurred here.

Furthermore, plaintiff did not select this forum—the defendants did by removing this action to federal court.  This further diminishes plaintiff's interest in preserving its choice of forum.  *See Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*, No. CIV 2:07-2199-WBS EFB, 2010 WL 347901, at *4 (E.D. Cal. Jan. 22, 2010) ("plaintiff's choice of forum should not be given substantial weight" because, *inter alia*, "[p]laintiff's choice of forum was not this court, but the Sacramento County

---

[9] Plaintiff Electrical Workers Local # 357 Pension and Health & Welfare Trusts ("Electrical Workers Local #357") did not disclose the location of its residency in the complaint.  *See* Compl. *passim*.  Based on a review of publicly available information, plaintiff's residence appears to be Las Vegas, Nevada.  *See Benefit Office Information*, ELECTRICAL WORKERS LOCAL 357 TRUST FUNDS, https://www.ourbenefitoffice.com/IBEWLocal357/Benefits/Contactus.aspx (last visited Feb. 25, 2016).

Superior Court; it was defendant who removed the action to this court"); *see also Jovel v. i-Health, Inc.*, No. CV–12–05526–DDP JCGx, 2012 WL 5470057, at *4 (C.D. Cal. Nov. 8, 2012) (concluding that "it is appropriate to give less deference to Plaintiff's choice of forum" as it was defendant who "removed [the case] to the Central District of California," and plaintiff, who "originally filed this action" in Los Angeles County Superior Court, only chose a California forum because it was "faced with the impending consolidation of the two actions in the Eastern District of New York.").

***Second***, transfer of a class action to the district in which the issuer is headquartered is "routine." *In re Yahoo! Inc.*, 2008 WL 707405, at *9 (quoting *In re Hanger Orthopedic Grp.*, 418 F. Supp. 2d 164 (E.D.N.Y. 2006) (collecting cases)). This practice is supported by overwhelming authority within the Ninth Circuit. *See*, *e.g.*, *Garlough v. Trader Joe's Co.*, No. 15-cv-01278-TEH, 2015 WL 4638340 (N.D. Cal. Aug. 4, 2015) (granting motion to transfer putative class action under Section 1404(a) to defendants' headquarters district), *Cardoza v. T-Mobile USA Inc.*, No. 08-5120 SC, 2009 WL 723843 (N.D. Cal. Mar. 18, 2009) (transferring securities action to district of issuer's headquarters), *Cohn v. Oppenheimerfunds, Inc.*, No. 09-cv-1656-WQH-BLM, 2009 WL 3818365 (S.D. Cal. Nov. 12, 2009) (same), *Gerin*, 2007 WL 1033472, at *6 (same). This Court's decision in *Gerin* is illustrative. The plaintiffs asserted causes of action against the defendants under Sections 11, 12(a)(2), and 15 of the Securities Act—the very claims asserted here—based on purported misstatements and omissions in the offering materials for variable annuity products. *See Gerin*, 2007 WL 1033472, at *1. In turn, the defendants sought to transfer the action under Section 1404(a) to the Middle District of Florida—"where the principal place of business of the primary defendant is located." *Id.* at *3, *5. This Court found that "Defendants make a compelling case for transfer: the primary defendants are located in Florida, the acts giving rise to the claims occurred in Florida, and a number of witnesses reside in Florida." *Id.* at 6. In particular:

> The annuities that all four Plaintiffs purchased, and that are at the center of this suit, were *issued by defendant . . . . which maintains its principal place of business in . . .* Florida. Consequently, most of the Defendants' material witnesses and documentary evidence are located in Florida. Most importantly, however, the prospectuses and marketing materials about which Plaintiffs complain, and which are the centerpiece of this litigation, were drafted, reviewed, edited and approved in Florida, and thus the operative facts on which the complaint is based transpired in Florida.

1    *Id.* (emphasis added).  On this basis, the Court granted defendants' motion to transfer.  *Id.*

2         Transferring a securities action to the issuer's headquarters district is grounded in black-letter

3    securities law principles.  A defendant's alleged misrepresentations and omissions "are deemed to

4    'occur' in the district where they are transmitted or withheld, not where they are received."  *In re*

5    *Galectin Therapeutics*, *Inc. Sec. Litig.*, No. 3:14-cv-00399-RCJ-WGC, 2015 WL 260881, at *5 (D.

6    Nev. Jan. 21, 2015) (quoting *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y.

7    1998)); *see also In Re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y.

8    2006) (describing question as "well-settled").  Hence, the defendant's headquarters will typically

9    serve as the "factual center of this case, and the locus of all relevant decisionmaking."  *In re Yahoo!*

10   *Inc.*, 2008 WL 707405, at *9 (quoting *In re AtheroGenics Sec. Litig.*, No. 05 Civ. 00061, 2006 WL

11   851708 (S.D.N.Y. 2006)).  Furthermore, "the location of the defendants is a weighty consideration in

12   deciding" venue "because plaintiffs' allegations focus on defendants' conduct and do not appear to

13   implicate involved questions of fact regarding plaintiffs' behavior."  *In re Yahoo! Inc.*, 2008 WL

14   707405, at *3.

15        ***Third***, for substantially these reasons, the convenience of the parties and witnesses, as well as

16   the location of relevant documents, overwhelmingly support a change in venue.  In securities class

17   actions, the "key witnesses" are generally "officers and employees of [the issuer] who participated in

18   drafting or distributing of allegedly false and misleading statements."  *In re Stillwater Mining Co.*

19   *Sec. Litig.*, No. 02 Civ. 2806 DC, 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003).  That is

20   precisely the case here.  Based on the allegations in the complaint, the key witnesses are the Clovis

21   officers who were involved in preparing, reviewing, and approving the Registration Statement and

22   Prospectus, virtually all of whom reside near Clovis headquarters in Boulder, Colorado.  These

23   witnesses are expected to testify about the presentation of the clinical efficacy data for rociletinib in

24   the offering documents, the inclusion of risk factors in the offering documents, the due diligence

25   undertaken by Clovis and its advisors in connection with the offering, and the November 16

26   disclosure.

27        As a result, it will be substantially more efficient for this litigation to proceed in the District

28   of Colorado.  Under Federal Rule of Civil Procedure 45(c), "[a] subpoena may command a person to

1   attend a trial, hearing or deposition . . . (A) within 100 miles of where the person resides, is

2   employed, or regularly transacts business in person; or (B) within the state where the person resides,

3   is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer;

4   or (ii) is commanded to attend a trial and would not incur substantial expense."  Fed. R. Civ. P.

5   45(c).  Clovis' headquarters in Boulder, Colorado is located almost 1,250 miles away from this

6   Court.[10]  Hence, the key Clovis witnesses involved in drafting, reviewing, and approving the offering

7   materials will be subject to compulsory process in the District of Colorado, not this District.

8   Moreover, the relevant documents here are located within the District of Colorado, not the Northern

9   District of California.  While this factor has been deemphasized to some extent in recent years due to

10   the increasing prevalence of electronically stored information, the concentration of pertinent

11   evidence within the District of Colorado still favors transfer to that district.  *See Ward v. Fluor*

12   *Enters., Inc.*, No. C 10-04361 SBA, 2011 WL 778720, at *4 (N.D. Cal. Mar. 1, 2011) ("the

13   possibility that documents can be produced electronically does not alter the conclusion that the cost

14   of litigation will likely be less if the case were venued in the forum where the evidence is located").

15          ***Fourth***, the applicability of either forum's law is a neutral factor in this case because plaintiff

16   asserts exclusively federal claims and both this District and the District of Colorado are equally

17   capable of interpreting and applying federal law.  Of course, plaintiff has no legally cognizable

18   interest in whether the law of the Ninth Circuit or another federal circuit's law applies here.  *See*

19   *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994) ("when reviewing federal claims, a

20   transferee court in [a] circuit is bound by [its] circuit's precedent"); *Menowitz v. Brown*, 991 F.2d 36,

21   40 (2d Cir. 1993) ("no litigant has a right to have the interpretation of one federal court rather than

22   that of another determine his case").  In other words, the authority holding that a change in venue

23   cannot deprive a plaintiff of state-law advantages when the court is sitting in diversity jurisdiction is

24   plainly inapposite here.  *Cf. Ferens v. John Deere, Co.*, 494 U.S. 516, 523 (1990).

25                    **3.       The Interests of Justice Weigh in Favor of Transfer**

26          Transfer pursuant to 28 U.S.C. § 1404(a) is strongly favored in circumstances, such as these,

27   where related litigation is pending in another judicial district.  As the Ninth Circuit has instructed,

28   _____

[10] Cording Decl. ¶ 3.

"[t]he feasibility of consolidation is a significant factor in a transfer decision" because of "the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974).  Where consolidation is possible, it can prove the "most compelling reason to transfer" venue. *Hernandez v. Union Pac. R.R. Co.*, No. C 04-04899 JW, 2005 WL 396614, at *3 (N.D. Cal. Feb. 18, 2005); *see also Jolly v. Purdue Pharma L.P.*, No. 05-CV-1452H, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical, and expeditious pre-trial proceedings and discovery and avoid[s] duplicitous [] litigation and inconsistent results.").  Indeed, "the pendency of a similar action in the transferee court is a universally recognized reason for granting a change of venue."  *See Pac. Coast Fed'n v. Gutierrez*, No. C-05-3232 JCS, 2006 WL 194507, at *2 (N.D. Cal. Jan. 24, 2006) (citation omitted).

    As demonstrated above, this action rests on virtually the same factual basis as the actions pending in Colorado.  Equally importantly, plaintiff's claims under the Securities Act overlap in important respects with the Colorado plaintiffs' claims under the Exchange Act.  Both Section 11 of the Securities Act and Section 10(b) of the Exchange Act require a plaintiff to "adequately allege a material misrepresentation or omission." *In re VeriFone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir. 1993).  Though Section 10(b) imposes a scienter requirement that Section 11 does not, the defendants here may rely upon a due diligence defense implicating their knowledge of the alleged misconduct.  *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996).  Loss causation issues are common to both claims—as an element of a Section 10(b) claim and as an affirmative defense to a Section 11 claim.  *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009).  Furthermore, "[a]lthough Section 15 and Section 20(a) are separate bases of liability, the Ninth Circuit has held that the control-person analysis is identical." *See Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411, at *13 (N.D. Cal. Aug. 14, 2006) (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990)).  Likewise, the PSLRA safe harbor for forward-looking statements applies to claims brought under both acts.  *See* 15 U.S.C. §§ 77z-2 (Securities Act safe harbor), 78u-5 (Exchange Act safe harbor).

1   Hence, upon transfer, this action can be consolidated into the litigation already pending

2   within that district.  *See* Fed. R. Civ. P. 42(a) (consolidation possible "[i]f actions before the court

3   involve a common question or law or fact").  Consolidation is particularly warranted here given that

4   the lead plaintiff in the Colorado actions—the Arkin Group—has already represented to this Court

5   that they intend to assert claims under the Securities Act in their consolidated complaint.  *See*

6   Cording Decl. G at 4.  Nor can there be any legitimate concerns that the interests of the putative

7   class would be prejudiced by transfer to Colorado, since, as Judge Moore observed, the Arkin Group

8   sustained financial losses of approximately $13.4 million, and is represented by one of "'the

9   preeminent securities class action law firms in the country.'"  Cording Decl. F at 6, 9; *see also*

10  *Harper Woods Emps. Ret. Sys. v. AXT, Inc.*, No. C-04-04362-MJJ, 2005 WL 318813, at *3 (N.D.

11  Cal. Feb. 7, 2005) (consolidating two securities class action lawsuits because, *inter alia*, "there has

12  been no allegation . . . . that delay, confusion, or prejudice would occur," especially since "the

13  selected counsel appears to be experienced in securities class actions").

14  In sum, the interests of justice decisively favor transfer.  The proceedings in this case,

15  including motion practice, discovery, and trial, will benefit from coordination with the four earlier

16  actions already pending in the District of Colorado.  *See Glaxo Grp. Ltd. v. Genetech, Inc.*, No. C

17  10-00675 JSW, 2010 WL 1445666, at *3 (N.D. Cal. Apr. 12, 2010) ("[T]ransferring this related

18  action to the same court [as prior related cases] is the most effective administration of justice.").

19  Indeed, this is the very purpose intended to be served by Section 1404(a).  As the Supreme Court

20  observed, "[t]o permit a situation in which two cases involving precisely the same issues are

21  simultaneously pending in different District Courts leads to the wastefulness of time, energy, and

22  money that § 1404(a) was designed to prevent."  *See Cont'l Grain Co. v. The Barge FBL-585*, 364

23  U.S. 19, 26 (1960).

24  **B.    THE TRANSFEREE COURT CAN DECIDE ANY MOTIONS TO REMAND**

25  In the Complaint, the plaintiff disputes this Court's subject matter jurisdiction, and thus

26  likely intends to remand this action to Superior Court, San Mateo County.  Compl. ¶ 10 (pleading,

27  erroneously, that this action is not removable under the federal securities laws).  Plaintiff's apparent

28  insistence on litigating this action in state court raises the question of how the Court should sequence

CLOVIS DEFS.' NOT. OF MOT. & MOT. TO TRANSFER  - Case No. 3:16-cv-00933-EMC

1    ruling on this motion to transfer and any motion to remand filed by plaintiff—a question whose

2    answer lies within the sound discretion of this Court.  *See Rumohr v. Comercia Bank*, Nos. C 11-

3    01706 WHA, 2011 WL 2437415 at *3 (N.D. Cal. June 17, 2011).  In short, this Court should defer

4    its ruling on any motion to remand because the District of Colorado, as the center of gravity of this

5    controversy, has the greatest interest in deciding whether this action should proceed in federal court.

6           As the Supreme Court squarely held, district courts are invested with authority to decide

7    where litigation should proceed before deciding whether they have subject matter jurisdiction over

8    the claims asserted therein.  *See Sinochem Int'l Co. v. Malay.  Int'l Shipping Corp.*, 549 U.S. 422,

9    432 (2007) (holding "[a] district court . . . may dispose of an action by a *forum non conveniens*

10   dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of

11   convenience, fairness, and judicial economy so warrant.").  Applying *Sinochem*, courts have held

12   that a motion to transfer may be granted under Section 1404(a) before the court resolves any issues

13   of subject matter or personal jurisdiction raised by the parties.  *See, e.g.*, *In re LimitNone, LLC*, 551

14   F.3d 572 (7th Cir. 2008) (*Sinochem* sequencing rule applies because "§ 1404(a) is nothing more than

15   a codification of the traditional forum non conveniens rules without . . . outright dismissal").

16          Accordingly, Courts in the Ninth Circuit have not hesitated to decide motions to transfer

17   before deciding motions to remand.  *See, e.g.*, *Duong v. ITT Educ. Servs., Inc.*, No. C 14-2653 PJH,

18   2014 WL 3772829 at *6 (N.D. Cal. July 31, 2014) (holding that "the court need not resolve the

19   motion to remand before transferring this case"); *Rumohr*, 2011 WL 2437415 at *3 (holding that

20   where related actions share common issues of law and fact, "[t]he purpose of Section 1404(a) would

21   clearly be achieved by a transfer"); *Pub. Emps.' Ret. Sys. of Miss. v. Stanley*, 605 F. Supp. 2d 1073,

22   1075 (C.D. Cal. 2009) (holding that where the operative facts bore little relation to California, "[i]t is

23   not in the interests of justice to subject Defendants to further litigation activity, such as a hearing on

24   the motion to remand, in California"); *Burse v. Purdue Pharma Co.*, No. C 04-594 SC, 2004 WL

25   1125055 at *1 (N.D. Cal. May 3, 2004) (holding that where the case involved a series of factually

26   similar nationwide class actions, "it is appropriate to consider Defendant's motion to transfer prior to

27   Plaintiffs' motion for remand").

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CONCLUSION</u>

For the reasons discussed above, defendants respectfully request that the Court transfer this case to the United States District Court for the District of Colorado, and grant any such further relief as the Court may deem just and proper.

DATED:  February 25, 2016

STRADLING YOCCA CARLSON & RAUTH, P.C.

/s/ Aaron C. Humes
John F. Cannon (SBN 149263)
Aaron C. Humes (SBN 272141)
90 New Montgomery Street, Suite 1015
San Francisco, CA 94105
Telephone: (415) 321-6026
Facsimile: (415) 283-1446
jcannon@sycr.com
ahumes@sycr.com


WILLKIE FARR & GALLAGHER LLP

Tariq Mundiya (to be admitted *Pro Hac Vice*)
Todd G. Cosenza (to be admitted *Pro Hac Vice*)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
tmundiya@willkie.com
tcosenza@willkie.com

*Attorneys for Defendants Clovis Oncology, Inc., Patrick J. Mahaffy, Erle T. Mast, M. James Barrett, Brian G. Atwood, James C. Blair, Paul Klingenstein, and Edward J. McKinley*