UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRICAL WORKERS LOCAL #357 PENSION AND HEALTH & WELFARE TRUSTS,<br><br>              Plaintiff,<br><br>      v.<br><br>CLOVIS ONCOLOGY, INC., et al.,<br><br>              Defendants. | Case No. 16-cv-00933-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Docket No. 6, 13 |

## I. INTRODUCTION

In this securities class action, Plaintiff Electrical Workers Local #357 Pension and Health & Welfare Trusts ("Electrical Workers") filed suit against Defendants Clovis Oncology, Inc., executives Patrick J. Mahaffy, Erle T. Mast, M. James Barrett, Brian G. Atwood, James C. Blair, Paul Klingenstein, Edward J. McKinley, Scott D. Sandell, Forest Baskett, and venture capital firms NEA 13 GP, Ltd., Aberdare Ventures IV, L.P., and underwriters J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, Stifel, Nicolaus & Company, Incorporated, and Mizuho Securities USAS Inc. (collectively "Clovis") alleging violations of sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). Before this Court is Electrical Workers' Motion to Remand.

Having considered the parties' briefs and oral argument presented at the hearing on April 18, 2016, the Court hereby **GRANTS** Electrical Workers' motion to remand.

## II. FACTUAL BACKGROUND

Defendants Clovis Oncology, Inc. is a biopharmaceutical company that focuses on

acquiring, developing, and commercializing anti-cancer agents in the United States and abroad. Docket No. 1, Exh. A-2 (Compl.) at ¶¶ 2, 27. Clovis's product, rociletinib, or CO-1686, is a "novel, oral, targeted covalent inhibitor of the cancer-causing mutant forms of epidermal growth factor receptor ("EGFR")" that is in clinical development and is "currently being studied for the treatment of non-small cell lung cancer ("NSCLC")." *Id.* at ¶ 27. Around November 16, 2011, Clovis filed its Prospectus for its initial public offering ("IPO") that formed part of the October 31, 2011 Form S-1/A Registration Statement for the IPO and became effective on November 15, 2011. *Id.* at ¶ 29. The IPO was successful as 10,700,000 shares of Clovis's common stock were sold at $13 dollars per share raising over $129.4 million in net proceeds. *Id.* at ¶ 30.

On May 19, 2014, Clovis issued a press release announcing that the Food and Drug Administration ("FDA") had granted "Breakthrough Therapy" designation for rocilentinib. *Id*. at ¶ 32. The 2012 FDA Safety and Innovation Act created a "Breakthrough Therapy" designation, which expedites the development and review of drugs that treat serious or life-threatening medical conditions as long as they have substantial preliminary clinical evidence of success. *Id.* at ¶ 31.

Around July 9, 2015, Clovis filed its Prospectus for the secondary offering that formed part of the June 11, 2013 Form S-3/A Registration Statement for the secondary offering and became effective on July 8, 2015. *Id.* at ¶ 33. This secondary offering resulted in at least 3,525,641 shares of Clovis's common stock sold at $78 per share raising over $259.9 million in net proceeds. *Id.* at ¶¶ 33–35. On September 17, 2015, Clovis's stock closed at $114.64 per share. *Id.* at ¶ 36.

On November 16, 2015, Clovis issued a press release disclosing the FDA's request for more clinical data for its efficacy analysis of rociletinib due to the insufficient data that Clovis previously submitted in its New Drug Application ("NDA"). *Id.* at ¶ 37. After the press release, the price of Clovis's shares decreased to $69.19 per share and ultimately closed at $30.24 per share on the same day – November 16, 2016. *Id.* at ¶ 38.

On December 15, 2015, Clovis issued another press release announcing that the FDA has extended the Prescription Drug User Fee Act ("PDUFA") date for Clovis's NDA for rociletinib by three months with a new goal date of June 28, 2016. *Id.* at ¶ 39. After this press release, the price of Clovis's shares decreased $0.89 per share and closed at $32.53 per share the following day on

2

1  December 16, 2016, representing a 58% decline in the prince of Clovis's stock from the secondary
2  offering price of $78 per share. *Id.* at ¶ 40.

3  On January 22, 2016, Plaintiff Electrical Workers Local #357 Pension and Health &
4  Welfare Trusts filed a securities class action in the San Mateo County Superior Court on behalf of
5  all persons who purchased or otherwise acquired Clovis common stock as related to Clovis's
6  Registration Statement and Prospectus that were issued in connection with its July 8, 2015
7  secondary offering. *Id.* at ¶ 1. Electrical Workers asserted claims under sections 11, 12(a)(2), and
8  15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o. *Id.* at ¶¶ 49–69. Electrical
9  Workers allege that the following facts were known by Clovis but concealed from the investing
10 public in Clovis's Registration Statement and Prospectus issued in connection with their
11 secondary offering: (1) the NDA that Clovis submitted to the FDA for rociletinib contained data
12 sets based on both unconfirmed response rates and immature confirmed response rates; (2)
13 Clovis's "Breakthrough Therapy" designation submission contained an immature data set based
14 primarily unconfirmed responses; (3) Clovis presented interim data publicly and at medical
15 meetings that included a data set based primarily on unconfirmed responses; (4) as the efficacy
16 data matured, the number of patients with an unconfirmed response who converted to a confirmed
17 response was lower than expected; and (5) Clovis's NDA was likely to either be delayed or
18 rejected by the FDA. *Id.* at ¶ 41(a)–(e).

19 On February 25, 2016, Clovis removed the action to this Court pursuant to 28 U.S.C. §
20 1441. Docket No. 1 at 2 ("Notice of Removal"). On the same day, Clovis filed a motion to
21 transfer venue under 28 U.S.C. § 1404(a) to the District of Colorado, asserting that four related
22 class actions with similar claims against Clovis are pending there.[1] Docket No. 6 ("Mot. to
23 Transfer"). On March 2, 2016, Electrical Workers filed a motion to remand the action back to
24 state court. Docket No. 13 ("Mot. to Remand"). On March 3, 2016, this Court determined that it
25 would decide the Motion to Remand first. Docket No. 14.

---

[1] Those four actions are: (1) *Medina v. Clovis Oncology, Inc., et al.*, No. 1:15-cv-2546; (2) *Kimbro v. Clovis Oncology, Inc., et al.*, No. 1:15-cv-2547; (3) *Moran v. Clovis Oncology, Inc., et al.*, No. 3:15-cv-5323; and (4) *Rocco v. Clovis Oncology, Inc., et al.*, No. 1:15-cv-02697.

### III. DISCUSSION

A. Legal Standard

Under 28 U.S.C § 1441(a), a defendant may remove a civil action filed in state court to federal court if the action could originally have been filed in federal court unless otherwise expressly provided by Congress. 28 U.S.C. § 1441(a). Additionally, if it appears that a district court lacks subject matter jurisdiction over a case previously removed from state court at any time before judgment, then the case must be remanded back to state court. 28 U.S.C. § 1447(c); *see Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). Upon a motion to remand, the scope of a removal statute is strictly construed against removal. *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (internal citations and quotations omitted).

Clovis bears the burden of proving that this action belongs in federal court. This is particularly so when Congress has expressly limited the right to remove particular kinds of lawsuits. Plaintiff does not have the burden of establishing an "express exception" to the removal statute.[2]

B. This Court Does Not Have Jurisdiction Over This Action

The issue presented is whether the Securities Act, as amended by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), explicitly bars removal of this action which asserts only federal Securities Act claims. The majority of courts that have addressed the issue have

---

[2] Clovis cites *Breuer v. Jim's Concrete of Brevard, Inc.*, as support for the assertion that the plaintiff has the burden to find an express exception whenever the subject matter of an action qualifies it for removal. 538 U.S. 691, 698 (2003); Opp. at 10–11. In that case, the Court noted that "[n]othing on the face of 29 U.S.C. § 216(b) [under the Fair Labor Standard Act of 1938] looks like an express prohibition of removal, there being no mention of removal, let alone of prohibition." *Id.* at 694. Here, 15 U.S.C. § 77v(a) expressly states: "Except as provided in section 77p(c) of this title, *no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed* to any court of the United States." *Id.* at § 77v(a) (emphasis added). Given the express prohibition of removal on the face of 15 U.S.C. § 77v(a), *Breuer* is distinguishable. Clovis must prove that the prohibition of removal does not apply to the instant matter.

4

concluded that removal of securities class actions with only federal claims is explicitly barred by the Securities Act, and, therefore, federal courts must remand these actions to state court. *E.g.*, *Plymouth Cty. Ret. Sys. v. Model N, Inc.*, No. 14-CV-04516-WHO, 2015 WL 65110, at *2 ( (N.D. Cal. Jan. 5, 2015) (agreeing that "because [the plaintiff] brings only Securities Act claims, not state law claims, removal of the action is barred by the antiremoval provision in section 77v(a)" and remanding case); *City of Warren Police & Fire Ret. Sys. v. Revance Therapeutics, Inc.*, 125 F. Supp. 3d 917, 920 (N.D. Cal. 2015) (same); *Liu v. Xoom Corp.*, No. 15-CV-00602-LHK, 2015 WL 3920074, at *4 (N.D. Cal. June 25, 2015) (same). For the reasons stated below, the Court agrees with what is emerging as the majority view.

### 1. The Statutory Language

The Court's analysis begins with the "plain language of the statute." *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009). "In ascertaining the plain meaning of the statute, [a] court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988). As long as the plain language of these statutes "is clear and consistent with the statutory scheme at issue, the statute's plain language is conclusive and this Court need not inquire beyond the plain language of the statute." *In re Jackson*, 184 F.3d 1046, 1051 (9th Cir. 1999).

At issue is the language of four interdependent provisions of the Securities Act: (1) 15 U.S.C. § 77v(a) (the "jurisdictional provision" and "anti-removal provision"); (2) 15 U.S.C. § 77p(c) (the "removal provision"), (3) 15 U.S.C. § 77p(b) (the "preclusion provision"), and (4) 15 U.S.C. § 77p(f)(2)(A) (defining the "definitional section").

Before the Securities Act was amended by SLUSA in 1998, 15 U.S.C. § 77v(a) (the "jurisdictional provision" and "anti-removal provision") granted state and federal courts concurrent jurisdiction over all Securities Act claims and prohibited removal of any case arising under the Securities Act. Specifically, section 77v(a) read in relevant part:

> The district courts of the United States and United States courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at

5

> law brought to enforce any liability or duty created by this subchapter. . . . No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

After the SLUSA amendments, 15 U.S.C. § 77v(a) reads in relevant part:

> The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, *except as provided in section 77p of this title with respect to covered class actions,* of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. . . . *Except as provided in section 77p(c) of this title*, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

*Id.* § 77v(a) (emphasis added to show amendment).

The "removal provision," 15 U.S.C. § 77p(c), entitled "Removal of covered class actions," provides:
> "Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b)." *Id.* § 77p(c).

The "preclusion provision," 15 U.S.C. § 77p(b), is titled "Class action limitations" and precludes certain covered class actions:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).

Lastly, the "definitional provision," 15 U.S.C. § 77p(f)(2)(A), defines a "covered class action" as:

6

(i) any single lawsuit in which-

>(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
>
>(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members . . . .

*Id.* § 77p(f)(2)(A).

### 2. The Plain Language of the Statute Requires Remand

Section 77v(a)'s anti-removal provision expressly bars removal of cases "arising under this subchapter," *i.e.*, Securities Act of 1933. Undisputedly, that would cover the instant suit. The only exception to the bar on removal is that provided in Section 77 p(c). Section 77p(c) allows removal of "any covered class action" "as set forth in subsection (b)." Section 77p(b), in turn, addresses "covered class action(s) *based upon the statutory or common law of any State or subdivision thereof.*" (Emphasis added.) Thus, under the plain language of the statute, only covered class actions asserting state law claims are removable (so as to allow the federal court to dismiss under the preclusion provision state law class action claims). Numerous courts are in accord. *See Buelow v. Alibaba Grp. Holding Ltd.*, No. 15-CV-05179-BLF, 2016 WL 234159, at *3 (N.D. Cal. Jan. 20, 2016) ("The most straightforward reading of the provisions is that only covered class actions with state law claims can be removed to federal court, as provided in § 77p(c), and only for the purpose of dismissing the state law claims, as required by § 77p(b)"); *Cervantes v. Dickerson*, No. 15-cv-3825-PJH, 2015 WL 6163573, at *4 (N.D. Cal. Oct. 21, 2015) (same); *Iron Workers Mid-S. Pension Fund v. Terraform Glob., Inc.*, No. 15-CV-6328-BLF, 2016 WL 827374, at *3 (N.D. Cal. Mar. 3, 2016) (same); *Rajasekaran v. CytRx Corp.*, No. CV 14-3406-GHK PJWX, 2014 WL 4330787, at *3 (C.D. Cal. Aug. 21, 2014) (same).

This reading of the plain language of the anti-removal provision of § 77v(a) is consistent with the jurisdictional language of that subsection. That provision states that state courts have

7

1  concurrent jurisdiction "except as provided in Section 77p with respect to covered class actions."
2  The exception pertains to covered class actions based on state law under subpart (b) of § 77p. As
3  to these actions, state courts lose concurrent jurisdiction once they are removed to federal courts in
4  accordance with Section 77p. Hence, Sections 77v(a) and 77p(b) dovetail in operation.[3]

Clovis argues that the jurisdictional provision in section 77v(a) and its withdrawal of state court jurisdiction "as provided" in section 77p should be read to incorporate generally "covered class actions" without regard to whether they are based on state or federal law. So viewed, according to Clovis, state courts would have no jurisdiction over either state and federal securities class actions. But this interpretation is without merit. Clovis reads Section 77v(a)'s reference to 77p as including only 77p(f)(2). But Section 77v(a) refers not to Section 77p(f)(2), but to Section 77p generally which *includes* Sections 77p(b) and (c). Clovis's reading ignores the entirety of Section 77p and the context of Section 77p(f)(2) which provides a definition for Section 77p(b). Section 77p(f) only defines the "universe of covered class actions from which the 77p(b) subset can be identified [and] does nothing to overwhelm § 77p's focus on state law claims." *Rajasekaran*, 2014 WL 4330787 at *5 (citing *W. Va. Laborers Trust Fund*, 2011 WL 6156945, at *5; *Luther v. Countrywide Financial Corp.*, 195 Cal. App. 4th 789, 798 (2011)).

Clovis also relies on the language of section 77v(a)'s anti-removal provision where it states, "Except as provided in section 77p(c) of this title, no case arising under [the Securities Act] and brought in any *state court of competent jurisdiction* shall be removed to any court of the United States." 15 U.S.C. § 77v(a) (emphasis added). Clovis contends that by limiting the anti-removal provision to apply only to state courts of "competent jurisdiction," its reach is limited and does not apply if state courts have no jurisdiction over any "covered class actions" which, according to Clovis, includes those based on state or federal law. However, as discussed above, the "except as provided in section 77p" language in section 77v(a)'s jurisdictional provision refers to state law class actions only. Therefore, the "state court of competent jurisdiction" language is

---

[3] Note that subparts (b), (c), and (d) of Section 77p "deal exclusively" with covered class actions based on state law. *Rajasekaran v. CytRx Corp.*, No. CV 14-3406-GHK PJWX, 2014 WL 4330787, at *5 (C.D. Cal. Aug. 21, 2014).

8

consistent with a plain reading of the statute.

To be sure, the reference in Section 77v(a) to state courts of "competent jurisdiction" should have some meaning. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (noting that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"); *United States v. Zhou*, 675 F.3d 1110, 1113 (9th Cir. 2012) ("an important rule of statutory construction [is] that every word and clause in a statute be given effect."). It does. As discussed above, state courts have "competent jurisdiction" over suits brought under the Securities Act of 1933. They also have jurisdiction over non-class actions (*i.e.*, individual) claims for securities fraud brought under state law. In both instances, removal is not permitted under Section 77v(a).

Finally, Clovis's interpretation of the anti-removal jurisdiction provision of Section 77v(a) as not applying to any class action, state or federally based (given that Section 77v(f)(2) itself is not limited to either), would thus render all class actions removable; but this would make the exception "as provided in Section 77p(c)" allowing removal of only certain class actions superfluous. *See Zhou*, 675 F.3d at 1113; *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1388, 1352 (2015) ("We have long held that a statute ought, upon the whole, to be construed that, if it can be prevented, no clause is rendered superfluous, void, or insignificant") (internal quotations omitted). Clovis's interpretation is thus unpersuasive.

3. <u>The Supreme Court and Ninth Circuit Provide Sufficient Guidance for This Interpretation of the Statute</u>

The Court's plain reading of the statutory framework is consistent with dicta[4] from opinions of the Supreme Court and the Ninth Circuit. In holding that a decision to remand a case removed under SLUSA is not appealable under 28 U.S.C. § 1447(d), the Supreme Court found -- just as this court has -- that "authorization for the removal in subsection (c) [is] confined to cases

---

[4] This precise issue has not been squarely addressed by appellate courts in this country due to the appellate review restrictions on remand orders within the removal statute. *Young v. Pac. Biosciences of Cal., Inc.*, 2012 WL 851509, at *3 (N.D. Cal. Mar. 3, 2012); *see* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal . . . .").

9

'set forth in subsection (b),'" *i.e.*, cases based upon state law that relate to claims of untruth and manipulation. Thus, the "straightforward reading" of sections 77p(b) and (c) is that section 77p(b) can either preclude an action, in which case "neither the district court nor the state court may entertain it, and the proper course is to dismiss[,]" or, "[i]f the action is not precluded, the federal court likewise has no jurisdiction to touch the case on the merits, and the proper course is to remand [the removed case back] to the state court that can deal with it." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 643 (2000); *see also id.* (rejecting the argument "that removal jurisdiction is broader by emphasizing the adjective that introduces subsection (c): 'Any' covered action [because] if we did read the removal power that broadly there would be no point to the phrase 'as set forth in subsection (b),' for subsection (b) cases would be removable as a subset of covered class actions."). As other courts within this district have found, "while the analysis in *Kircher* may be dicta, it is nevertheless highly persuasive." *Rajasekaran*, 2014 WL 4330787, at *4; *see also Cervantes*, 2015 WL 6163573, at *5; *Liu*, 2015 WL 3920074, at *4; *Plymouth Cty. Ret. Sys.*, 2015 WL 65110, at *3; *Desmarais v. Johnson*, No. C 13-3666 WHA, 2013 WL 5735154, at *3–5 (N.D. Cal. Oct. 22, 2013); *Buelow*, 2016 WL 234159, at *3.

In *Madden v. Cowen & Co.*, 576 F.3d 957 (9th Cir. 2009), the Ninth Circuit adopted the reasoning in *Kircher*, stating:

> To prevent actions precluded by SLUSA from being litigated in state court, SLUSA authorizes defendants to remove such actions to federal court, effectively ensuring that federal courts will have the opportunity to determine whether a state action is precluded. As the Supreme Court has explained, any suit removable under SLUSA's removal provision, § 77p(c), is precluded under SLUSA's preclusion provision, § 77p(b), and any suit not precluded is not removable.

*Id.* at 964–65 (citing *Kircher*, 547 U.S. at 644) (footnotes omitted). Likewise, in *Luther*, the Ninth Circuit also addressed the anti-removal provision in section 77v(a), stating that it "strictly forbids the removal of cases brought in state court and asserting claims under the Act." 533 F.3d at 1033. Therefore, "by virtue of § 22(a) of the Securities Act of 1933 [section 77v(a) or the "anti-removal provision"]," the plaintiff's "state court class action alleging only violations of the Securities Act

10

of 1933 was not removable" and the case was subsequently remanded to state court. *Id.* at 1034.[5]

Since 2013, every court in this district has granted remand of removed suits alleging violations of the Securities Act of 1993, relying on what "appears to be emerging as the dominant view around the country," *i.e.*, that only covered class actions based on state law can be removed to federal court for the purpose of dismissing the precluded state law claims. *Plymouth Cty Ret. Sys..*, 2015 WL 65110, at *3*; see also Iron Workers*, 2016 WL 827374, at *3; *Buelow*, 2016 WL 234159, at *4; *Kerley v. MobileIron Inc.*, No. 15-cv-04416-VC, Order Granting Motion to Remand at 1 (N.D. Cal Nov. 30, 2015); *Cervantes*, 2015 WL 6163573, at *7; *City of Warren Police & Fire Ret. Sys.*, 125 F. Supp. 3d at 921; *Liu*, 2015 WL 3920074, at *5; *Desmarais*, 2013 WL 5735154, at *5; *Toth v. Envivo, Inc.*, No. C 12-5636 CW, 2013 WL 5663100, at *2 (N.D. Cal. Oct. 17, 2013); *Reyes v. Zynga Inc*, No. C 12-05065 JSW, 2013 WL 5529754, at *4 (N.D. Cal. Jan. 23, 2013); *Harper v. Smart Techs., Inc.*, No. C 11-5232 SBA, 2012 WL 12505217, at *6 (N.D. Cal. Sept. 28, 2012).[6]

Clovis argues that the Supreme Court's decision in *Kircher* actually foreclosed the plain reading of the statute. Opp. at 13–14. According to Clovis, reading the statutory language to find that only covered class actions with state law claims are removable *necessarily implies* that state

---

[5] Clovis argues that Ninth Circuit precedent in *Madden* and *Luther* are not controlling authority because both cases do not address removal of federal claims under the Securities Act. Opp. at 22–23. In *Madden*, Clovis contends that removal was sought under the SLUSA removal provision, section 77p(c), for state law actions and not federal law claims. Opp. at 22. Clovis also contends that *Luther* is distinguishable because it dealt with removal under the Class Action Fairness Act of 2005 and did not address SLUSA's amendment to section 77v(a)'s concurrent jurisdiction provision. *Id.* However, as Judge Orrick stated, "[t]he Ninth Circuit has also provided dicta that reinforces [the plaintiff]'s position" and the defendants' "contention that decisions granting remand 'do not adequately address' the SLUSA amendment to the Security Act's jurisdictional provision amounts to mere disagreement with the analysis in those decisions." *Plymouth Cty. Ret. Sys.*, 2015 WL 65110, at *4. Again, while dicta, the Ninth Circuit's opinions reinforce the reading adopted by this Court that class actions brought in state court are only removable when those actions bring state law claims.

[6] In fact, one district court recently awarded payment of costs and expenses, including attorney's fees, incurred as a result of removal under 28 U.S.C. § 1447(c) because "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 131, 141 (2005); *see Iron Workers Mid-S. Pension Fund v. Terraform Glob., Inc.*, No. 15-CV-6328-BLF, 2016 WL 827374, at *5 (N.D. Cal. Mar. 3, 2016). "Defendants' reliance on mostly out-of-district cases to support their position ignores the growing and uniform body of law in this district, including relevant Ninth Circuit case law, reaching the opposite conclusion." *Iron Workers*, 2016 WL 827374, at *6.

1  courts lack jurisdiction over those precluded claims. *Id.* As a result, this interpretation would
2  conflict with *Kircher* because the Supreme Court found that both state and federal courts had
3  jurisdiction to determine if a covered class action is precluded when it stated:

> But a district court does not have the last word on preclusion under the Act, for nothing in the Act gives the federal courts exclusive jurisdiction over preclusion decisions. A covered action is removable if it is precluded, and a defendant can enlist the Federal Judiciary to decide preclusion, *but a defendant can elect to leave a case where the plaintiff filed it and trust the state court (an equally competent body*, see *Missouri Pacific R. Co. v. Fitzgerald,* 160 U.S. 556, 583, 16 S.Ct. 389, 40 L.Ed. 536 (1896)) *to make the preclusion determination*.

*Kircher*, 547 U.S. at 646 (emphasis added). Clovis seems to argue that: (1) a state court must have jurisdiction over a claim to grant a dismissal on the basis of preclusion, (2) under the majority reading, a state court does not have jurisdiction over claims listed in 77p(b) (the state law claim class actions), and (3) therefore this violates *Kircher* because *Kircher* found that a state court can dismiss such claims, but if the state court lacks jurisdiction to begin with, then they cannot dismiss on the basis of preclusion. But if the Court were to read the jurisdictional part of 77v(a) as being all class actions, Clovis runs into the same problem -- if the state court lacks jurisdiction over any class action, then they also would not be able to dismiss any class action claims brought under state law. Thus, Clovis's reading would also be at odds with *Kircher*. The important point here is § 77p(c) uses the term "removable"; § 77v(a)'s concurrent jurisdiction provision allows for state court retention of jurisdiction unless and until it is removed by the defendant pursuant to the removability provision of § 77p.

Clovis further supports this reading by relying on the Southern District of New York district court's decision in *Hung v. Idreamsky Tech. Ltd.*, No. 15-CV-2514 (JPO), 2016 WL 299034, (S.D.N.Y. Jan. 25, 2016), suggesting that it is the first federal court decision to address whether "state courts lack jurisdiction over class actions asserting federal securities claims" in the context of *Kircher*. Opp. at 2, 14. In *Hung*, the district court declined to remand a securities class action because it determined that the New York state court was not a court of competent jurisdiction under section 77v(a) and thus lacked jurisdiction over that covered class action.

*Hung*, 2016 WL 299034 at *4.  The court observed that

> [Plaintiff]'s parsing, meanwhile, runs afoul of the Supreme Court's decision in *Kircher*.  [Plaintiff] interprets the "except" clause to strip state courts of jurisdiction over cases removable under § 77p(c).  In *Kircher*, the Supreme Court said just the opposite.  547 U.S. at 646 ("[A] defendant can elect to leave a [removable] case where the plaintiff filed it and trust the state court (an equally competent body) to make the preclusion determination." [citations omitted].

*Id.* at *2.  However, Clovis's argument is dependent on the theory that state courts lack the ability to dismiss a state law claim as precluded, an argument that Electrical Workers does not advance. Opp. at 13–14.  Instead, a plain reading of the statute is that *no* court can hear a covered class action with only state law claims, including federal courts; this would not deprive either the state or federal court of the ability to dismiss such a case.  Clovis's analysis is hardly new.  District courts, especially in this district, have analyzed *Kircher* in rejecting the kind of statutory interpretation advocated for by Clovis.  *See Cervantes*, 2015 WL 6163573, at *5 (finding that "dicta from the U.S. Supreme Court and the Ninth Circuit" supports the reading that "authorization for the removal in § 77p(c), on which the District Court's jurisdiction depends, [is] confined to cases set forth in subsection (b)") (internal quotations omitted); *City of Warren Police & Fire Ret. Sys.*, 125 F. Supp. 3d at 920; *Liu*, 2015 WL 3920074, at *4; *Pac. Inv. Mgmt. Co. v. Am. int'l Grp., Inc.*, Case No. SA CV 15-0687-DOC (DFMx), 2015 U.S. Dist. LEXIS 75355, at *21 (C.D. Cal. June 10, 2015); *W. Va. Laborers Trust Fund v. STEC Inc.*, SACV 11-01171-JVS (MLGx), 2011 U.S. Dist. LEXIS 146846, at *8-9 (C.D. Cal. Oct. 7, 2011); *Plymouth Cty. Ret. Sys.*, 2015 WL 65110, at *3; *Rosenberg v. Cliffs Natural Res., Inc.*, Case No.: 1:14cv1531, 2015 U.S. Dist. LEXIS 48915, at *8 (N.D. Ohio Mar. 25, 2015); *Desmarais*, 2013 WL 5735154, at *3; *City of Birmingham Ret. & Relief Sys. v. MetLife, Inc.*, Case No. 2:12-cv-2626-HGD, 2013 U.S. Dist. LEXIS 147675, at *21-22 (N.D. Ala. Aug. 23, 2013); *Reyes*, 2013 WL 5529754, at *3; *Niitsoo v. Alpha Natural Res., Inc.*, 902 F. Supp. 2d 797, 807 (S.D. W.Va. 2012); *Young*, 2012 WL 851509, at *3; *W. Palm Beach Police Pension Fund v. Cardionet, Inc.*, Civil No. 10cv711-L(NLS), 2011 U.S. Dist. LEXIS 30607, at *5 (S.D. Cal. Mar. 24, 2011).  *See also Iron Workers*, 2016 WL 827374 at *3 (rejecting *Hung* in finding that "[t]he most straightforward reading of the

provisions is that only covered class actions with state law claims can be removed to federal court, as provided in § 77p(c), and only for the purpose of dismissing the state law claims, as required by § 77p(b)," and that "[t]his position is consistent with dicta from the Supreme Court and the Ninth Circuit").

Clovis next relies on *Lapin v. Facebook, Inc.*, the only case in this district to have found that "federal courts alone have jurisdiction to hear covered class actions raising 1933 Act claims." No. C-12-3195 MMC, 2012 WL 3647409, at *2 (N.D. Cal. Aug. 23, 2012) (quoting *Knox v. Agria Corp.*, 613 F. Supp. 2d 419, 425 (S.D.N.Y. 2009)). *Lapin* determined that because "SLUSA amended § 77v to exempt such covered class actions from § 77v's concurrent jurisdiction provision" then only federal courts have jurisdiction to hear covered class actions raising Securities Act claims. 2012 WL 3647409, at *2 (quoting *Knox*, 613 F. Supp. 2d at 425). However, this reasoning "ignore[s] the express inclusion of the '[e]xcept as provided in [S]ection 77p(c)' language in Section 77v(a)'s provision on removal." *Desmarais*, 2013 WL 5735154, at *3. Further, *Lapin* declined to find the Supreme Court's decision in *Kircher* as persuasive because it "addressed the provisions of SLUSA allowing removal of class actions alleging claims brought under state law." 2012 WL 3647409, at *2 n.4. Other courts in this district have rejected *Lapin* as contrary to "more than a dozen district courts around the country. . . [that] have construed section 77p(c) to preclude removal in cases like this one." *Toth*, 2013 WL 5663100, at *2, n.1; *see also Niitsoo*, 902 F. Supp. 2d at 804 (rejecting *Lapin*'s finding that *Kircher* was inapplicable because it dealt with claims brought under state law, and instead concluding that "§ 77p(c) means exactly what the Supreme Court says it means in *Kircher*," *i.e.*, that "subsection (b) must be read into subsection (c)"). Accordingly, *Lapin* is not persuasive.

4. <u>Legislative History</u>

Clovis asserts that SLUSA's legislative history clearly shows that Congress intended to eliminate concurrent jurisdiction over class actions when it enacted SLUSA. Opp. at 20. When a court engages in statutory interpretation, it may "rely on plain language in the first instance, but always look to legislative history in order to determine whether there is a clear indication of contrary intent." *Flores-Arellano v. I.N.S.*, 5 F.3d 360, 363 (9th Cir. 1993); *see Funbus Sys., Inc.*

*v. Cal. Pub. Utils. Comm'n*, 801 F.2d 1120, 1126 (9th Cir. 1986) (court may consider the legislative history for aid in ascertaining Congress' intent of a statute where the plain language is ambiguous). For the reasons stated above, the statutory language is not ambiguous. *Rubin v. United States*, 449 U.S. 424, 430 (1981).

Even if the plain language of the statute were ambiguous so as to make the legislative history of SLUSA relevant, the legislative history supports the Court's conclusion. The Private Securities Litigation Reform Act of 1995 ("PSLRA") "targeted perceived abuses of the class-action vehicle in litigation involving nationally traded securities and put limits on federal securities class actions." *Kircher*, 547 U.S. at 636 (citations and quotations omitted). In 1998, Congress concluded that plaintiffs were avoiding the PSLRA's ("PSLRA") reforms by "bringing [securities] class actions under state law, often in state court." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 81–82 (2006)). Thus, Congress enacted SLUSA and sought to curb the state law end-around by "prevent[ing] state laws from being used to frustrate the operation and goals of the [PSLRA]." S. Rep. No. 105–182 at 2. Congress's distrust was of plaintiffs using state law class actions, *not* of state judges presiding over claims arising under the Securities Act. *See Unschuld*, 2007 WL 2729011 at *8 (there is language that suggests that "Congress was simply trying to preempt or preclude state law, *not state fora*, from being used in securities class actions." (emphasis added)). Indeed, the first sentence of SLUSA states that the purpose of the Act is "to limit the conduct of securities class actions under State law, and for other purposes." *See* Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (1998). There are similar statements in congressional reports. *See* H.R. Rep. No. 105-803, at 1 (1998); H.R. Rep. No. 105-640, at 1, 11 (1998); S. Rep. No. 105-182, at 1, 2, 11, 14, 19 (1998). The Ninth Circuit has interpreted SLUSA's purpose accordingly. *See Madden*, 576 F.3d at 964 ("SLUSA sought to achieve these goals by generally precluding 'covered class actions' alleging fraud or misrepresentation *under state law* in connection with 'covered securities.'") (emphasis added); *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1228 (9th Cir. 2009) ("[SLUSA's] only discernible intent was to preclude the use of the class-action device to prosecute

15

certain state-law class action claims.").[7]

In short, Congress knew how to limit claims arising under the Securities Act and did so accordingly. Congress could have easily provided that federal courts have exclusive jurisdiction over securities class actions, but it did not do so. *See Rajasekaran*, 2014 WL 4330787, at *5 ("Had Congress intended to make federal district courts the exclusive forum for securities class actions, we presume it would have said as much."); *Desmarais*, 2013 WL 5735154, at *4 ("It would have been very easy for Congress to state that all securities actions, including all 1933 Act claims, would be removable. Congress did not so state.").

### IV. CONCLUSION

For the reasons stated above, the plain language of the statute requires remand because this action brought under the Securities Act of 1933 was filed in a state court of competent jurisdiction and is therefore not removable under 15 U.S.C. § 77v(a). Accordingly, this Court **GRANTS** Electrical Workers' Motion to Remand. This action is hereby **REMANDED** to the San Mateo Superior Court. Clovis's Motion to Transfer is **DENIED** as moot.

This order disposes of Docket Nos. 6 and 13.

**IT IS SO ORDERED**.

Dated: May 5, 2016

_____
EDWARD M. CHEN
United States District Judge

---

[7] Clovis relies on a few statements in the congressional record as well as a House of Representatives Conference Committee Report in arguing that Congress enacted SLUSA in order "to make Federal court the exclusive venue for most securities fraud class action litigation . . ." and a House of Representatives Committee Report stating that "[u]nder the legislation, class actions relating to a 'covered security' . . . alleging fraud or manipulation must be maintained pursuant to the provisions of Federal securities law, in Federal court . . . ." H.R. Conf. Rep. No. 105–803, at 13, 15 (1998); H.R. Rep. No. 105-640, at 9 (1998); *see* Opp. at 6, 20–21. While such isolated snippets of legislative history tends to support Clovis's position, it must be weighed against the legislative history cited above, which supports the Court's decision to remand. *See Plymouth Cnty. Ret. Sys.*, 2015 WL 65110, at *4 ("The legislative history cited by defendants is hardly compelling, particularly in light of the considerable legislative history cited by [the plaintiff] (and a number of other courts) that supports remand in circumstances like those at issue here.").